UNITED STATES of America, Plaintiff-Appellee,

v.

Zoilo CHAVEZ, Defendant-Appellant.

No. 98-6878.

United States Court of Appeals,

Eleventh Circuit.

Feb. 29, 2000.

Appeal from the United States District Court for the Middle District of Alabama.(No. 98-00151-CR-N), Ira DeMent, Judge.

Before ANDERSON, Chief Judge, WILSON, Circuit Judge, and HILL, Senior Circuit Judge.

WILSON, Circuit Judge:

Zoilo Chavez appeals his judgment and sentence, including the conditions of his probation. We have jurisdiction pursuant to 28 U.S.C. § 1291 to review the final judgment of the district court. We affirm for the reasons that follow.

## I. BACKGROUND

After a bench trial, Chavez was convicted of a Class B misdemeanor for a violation of 18 U.S.C. 113(a)(4),[1] assault by striking, beating or wounding within the territorial jurisdiction of the United States. The district court denied Chavez's motion for a jury trial because the charged crime was a petty offense that carried a potential maximum six month term of imprisonment and maximum fine of $5,000.

At trial, Chavez's wife, Jacqueline Chavez testified that on May 31, 1998, her husband picked her up from church and took her to the commissary on Maxwell Air Force Base ("commissary"). At the commissary, an argument ensued between them which was later revisited in Chavez's vehicle in the parking lot of the commissary. According to Mrs. Chavez, her husband grabbed her by the hair, slapped her in the

---

[1]This section was formerly designated as § 113(d). *See* 18 U.S.C. § 113 (historical and statutory notes).

face and hit her with his fist in the back of the neck, while screaming and cursing at her. Thereafter, she threw a cup of soup at him.

An independent eyewitness testified that he saw Chavez struggling with his wife in his lap, holding her by the hair and placing his hand around her neck in a choking manner. The witness and Mrs. Chavez testified that they smelled an odor of alcohol on Chavez. A physician who treated Mrs. Chavez for her injuries testified that they were consistent with either slapping or rubbing against hands or pants.

Chavez's version of events is that he purchased a box of chicken for his grandchildren over Mrs. Chavez's objections. When he and Mrs. Chavez left the commissary, Mrs. Chavez screamed at him, threw a cup of soup at him and began to hit him. Chavez claimed that he held her merely to restrain her from hurting him or herself. He denied hitting her in the face or grabbing her neck. He could not explain the marks on her neck.

The couple subsequently separated, and at the time of Chavez's sentencing, a divorce proceeding was pending in state court.

At trial before the district court, the court admitted evidence of Chavez's prior abuse of his wife as proof of motive, opportunity, design or absence of mistake.

Chavez moved for a new trial, and the court denied his motion. At sentencing, the court adopted the probation officer's findings of fact, considered Chavez's objections to the probation report and recommendation, and sentenced Chavez to five years' probation. The court required Chavez to comply with the court's standard conditions of probation; prohibited him from possessing a firearm, destructive device or illegal controlled substances; required him to submit to drug testing and/or treatment, to undergo at his expense a mental health evaluation and any recommended treatment; and required him to pay (1) $1,400 to the Family Sunshine Center as restitution for his wife's treatment, (2) a fine in the amount of $5,000, (3) a

2

special assessment of $10,[2] and (4) $1,200 per month (or an amount determined by a local court) to his wife for living expenses. Chavez was also required to attend a rehabilitation program for domestic violence offenders, reside in a community correctional facility ("halfway house") and retain his health insurance for himself and Mrs. Chavez. He was prohibited from disbursing any funds from his portfolio or inheritance without court approval.

Chavez filed a motion to appoint his brother as attorney-in-fact to act in his stead during court proceedings in Puerto Rico. The court denied the motion. Chavez filed several other motions that were denied, including a motion to stay and a motion to bar the government from charging him for his "costs of incarceration." This appeal followed.

## II. DISCUSSION

Chavez requests that this Court reverse his sentence and conviction, remand this case for a new trial by jury and deem the conditions of his probation unlawful or plainly unreasonable. He asserts seven grounds for his appeal: (1) he was denied his right to a trial by jury; (2) the district court erred in admitting evidence of his prior acts of assault against his wife; (3) the court exceeded the maximum fine allowed by requiring him to pay for his "costs of incarceration;" (4) his sentence of "six months' incarceration is unlawful and/or plainly unreasonable;"[3] (5) the court erred in changing the condition of his probation that required him to "attend" a domestic violence rehabilitation program to a requirement that he "successfully complete" the program; (6) the court erred by requiring him to undergo a mental health evaluation and to pay the associated costs; and (7) the court infringed upon his access to court and right to contract by notifying all who had financial dealings with him or were in litigation with him about his incarceration, by denying him the right

---

[2]Chavez does not take issue with this assessment. It was properly imposed. *See* 18 U.S.C. § 3013(a)(1)(A)(ii).

[3]Chavez equates that portion of his probationary sentence requiring him to reside in a halfway house with incarceration. We shall discuss the reasons why such a characterization is erroneous when we address this contention.

to have his brother act as attorney-in-fact in other court proceedings, and by requiring him to pay $1,200 a month "restitution" to his wife.

*Right to Jury Trial*

Chavez contends that the district court deprived him of his right to a jury trial on the ground that 18 U.S.C. § 113(a)(4) is a petty offense that carries a maximum prison term of six months and a maximum fine of $5,000. The issue of whether a defendant is entitled to a jury trial when charged with a violation of 18 U.S.C. § 113(a)(4) and the issues implicated by Chavez's arguments are ones of first impression in this Circuit. This appeal presents questions of law which we review *de novo. See United States v. Brown,* 71 F.3d 845, 846 (11th Cir.1996) (whether an offense is petty or serious is a question of law). Sentences for Class B misdemeanors, such as the charged offense, are not subject to the Sentencing Guidelines and will not be disturbed on appeal unless "they were imposed in violation of law (such as by exceeding statutory limits) or are 'plainly unreasonable.' " *United States v. Bichsel,* 156 F.3d 1148, 1151 (11th Cir.1998) (citations omitted).

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy a right to a speedy and public trial, by an impartial jury...." U.S. Const. amend. VI. This amendment has been construed to apply only to "serious" offenses, and not to "petty offenses." *See Duncan v. Louisiana,* 391 U.S. 145, 159, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The most relevant factor for ascertaining whether a crime is serious or petty is the maximum penalty that the legislature has authorized. *See Baldwin v. New York,* 399 U.S. 66, 68, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970) (plurality opinion). The maximum penalty reveals the legislature's determination about the severity of an offense. A court should not substitute its own judgment regarding an offense's severity for that of Congress, which is the branch "better equipped to perform the task." *Blanton v. City of North Las Vegas,* 489 U.S. 538, 541, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989) (quotation omitted).

An offense that carries a possible sentence exceeding six months' imprisonment is severe and affords a defendant the right to a jury trial. *See Baldwin,* 399 U.S. at 69, 90 S.Ct. 1886 (plurality opinion). In contrast, a crime that carries a maximum incarcerative term of six months or less is presumed petty, not entitling a defendant to a jury trial. *See United States v. Nachtigal,* 507 U.S. 1, 3, 113 S.Ct. 1072, 122 L.Ed.2d 374 (1993). "A defendant can overcome this presumption, and become entitled to a jury trial, only by showing that the additional penalties, viewed together with the maximum prison term, are so severe that the legislature clearly determined that the offense is a 'serious' one." *Id.* at 3-4, 113 S.Ct. 1072.

Assault by striking, beating or wounding within the territorial jurisdiction of the United States is presumptively a petty offense. It carries a maximum penalty of six months' imprisonment or a $5,000 fine or both. *See* 18 U.S.C. §§ 113(a)(4), 3571(b)(6) (fine), 3581 (imprisonment). The offense is classified as a Class B misdemeanor. *See* 18 U.S.C. § 3559(a)(7). Congress has expressly designated Class B misdemeanors as "petty offense[s]." *See* 18 U.S.C. § 19.

Only one other circuit has published opinions regarding whether 18 U.S.C. § 113(a)(4) carries a jury trial entitlement. The Sixth Circuit has held that § 113(a)(4) proscribes a petty offense for which there is no constitutional right to a trial by jury. *See United States v. Stewart,* 568 F.2d 501, 503 (6th Cir.1978) (analyzing statute under predecessor designation § 113(d)). Although our colleagues in the Sixth Circuit shed light on the historical treatment of the offense and the maximum penalty authorized by the legislature, they were not confronted with the issues at bar,[4] including whether the "additional" penalties authorized by the legislature are so severe that they reflect Congress' judgment that the offense is indeed serious.

Chavez has failed to overcome the presumption that the offense is petty because he has not demonstrated that Congress considered the offense to be serious. *See Nachtigal,* 507 U.S. at 4, 113 S.Ct.

---

[4]In *United States v. Hunt,* 661 F.2d 72, 74 n. 4 (6th Cir.1981), the court determined that collateral consequences attaching to § 113(d), such as being denied parole and subject to harsher treatment in prison, did not "convert a serious crime into a serious crime for jury purposes." But the *Hunt* court did not address the precise consequences before this Court.

1072. Chavez's contentions rest on the premise that the harsh penalties authorized by Congress, which he received, are "in addition to or in alternative to the maximum sentence of a six month term of imprisonment and a maximum fine of $5,000" and render his offense serious. This reasoning is faulty for several reasons.

First, Chavez's contention that penalties imposed as an "alternative" to the maximum sentence render the offense serious is meritless. It "illustrates the fallacy of simply converting a term of probation into one of incarceration without taking [their] differences into account." *United States v. Granderson,* 969 F.2d 980, 984 (11th Cir.1992), *aff'd,* 511 U.S. 39, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994). To ascertain whether the legislature considered an offense to be serious, we look to the "additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration." *Blanton,* 489 U.S. at 543, 109 S.Ct. 1289. Chavez received probation instead of incarceration. Probation entails a "conditional liberty." It implicates a restraint on liberty that is "less severe than imprisonment," even though it can last longer. *Granderson,* 969 F.2d at 984. Therefore, even if the conditions of probation restrain Chavez' freedom somewhat, they cannot be equated with incarceration.

Second, Congress has clearly authorized courts to impose probation as an alternative to a term of imprisonment. For misdemeanors, a court may impose a term of probation not to exceed five years. *See* 18 U.S.C. § 3561(a), (c)(2); *Nachtigal,* 507 U.S. at 5, 113 S.Ct. 1072 (construing probation as alternative to imprisonment); *Granderson,* 969 F.2d at 984 (probation is alternative to incarceration); *see also United States v. Unterburger,* 97 F.3d 1413, 1415 (11th Cir.1996) (offense is not severe when it is punishable by a six month maximum term of imprisonment and a maximum $10,000 fine or alternatively, by a five year probation term); *United States v. LaValley,* 957 F.2d 1309, 1312 (6th Cir.1992) (offense carrying maximum incarceration of six months, a maximum fine of $5,000 and a five year term of supervised release is petty).

A court may impose a variety of discretionary conditions to any probationary sentence. *See* 18 U.S.C. § 3563(b). In authorizing discretionary probation conditions, Congress did not indicate that they were "additional" penalties severe enough to convert an otherwise petty offense into one that is serious. Congress

decided that petty offenses may be punished by any combination of the authorized conditions as long as they are reasonably related to the statutory factors regarding the imposition of a sentence. Any resultant deprivation of a liberty or property interest must be reasonably necessary for deterrence, public protection, and provision to the defendant of necessary training, care and treatment. *See* 18 U.S.C. § 3553(a)(2), (b). The discretionary conditions do not alter the conclusion that probation and monetary fines are "far less intrusive than incarceration." Although the discretionary conditions enumerated in § 3563(b) infringe on liberty more than unconditional probation, "they do not approximate the severe loss of liberty caused by imprisonment for more than six months." *Nachtigal,* 507 U.S. at 5, 113 S.Ct. 1072.

Third, Chavez mischaracterizes his sentence as consisting of "additional penalties." What Chavez believes are "additional penalties" are really part of his alternative penalty; they are conditions of his probation. The conditions are expressly authorized by statute or reasonably relate to the statutory objectives of sentencing. *See* 18 U.S.C. §§ 3563(b) (discretionary conditions of probation); 3553(a)(1), (a)(2) (factors to be considered in imposing a sentence). It is rare for the "legislature [to] pack[ ] an offense it deems serious with onerous penalties that nonetheless do not puncture the 6-month incarceration line." *Blanton,* 489 U.S. at 543, 109 S.Ct. 1289 (internal quotation marks omitted). Nevertheless, we examine each purported "additional penalty" and explain why these penalties do not indicate that the legislature deemed the offense serious and therefore, cannot overcome the presumption that the offense is petty.

*Additional Penalties*

According to Chavez, the crime is a serious offense due to the harsh penalties imposed by Congress. These penalties include restitution; an additional mandatory term of supervised release of up to one year in a community correctional facility; an additional term of imprisonment of one year for violation of conditions of supervised release; and the loss of his Second Amendment right to bear arms. These contentions lack merit.

*Restitution*

7

A court may require a defendant to pay restitution to a victim of the offense as a condition of probation, *see* 18 U.S.C. § 3563(b)(2), or "in addition to or in lieu of, any other penalty authorized by law." 18 U.S.C. §§ 3663A(a)(1), 3663(a)(1). Restitution may be imposed in addition to a fine and probation. *See* 18 U.S.C. § 3551. When an offense results in bodily injury to a victim, a court shall require a defendant to pay restitution for the "cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment...." 18 U.S.C. § 3663A(b)(2)(A). The court ordered Chavez to pay $1400 for his wife's counseling at the Family Sunshine Center. This is a lawful sanction. We find no indication that Congress considered this monetary sanction to be so severe as to convert the petty offense into a serious one.

*Supervised Release*

A mandatory term of supervised release applies after imprisonment. *See* 18 U.S.C. § 3583(a). Because Chavez was not sentenced to imprisonment, he is not subject to a mandatory term of supervised release. A defendant on probation has received an alternative to imprisonment. Supervised release is imposed only after an incarcerative sentence has been served. *See Granderson,* 969 F.2d at 984. As we shall discuss, Chavez's confinement to the halfway house does not constitute imprisonment as he contends. Therefore, his contention lacks merit. Even if supervised release could be imposed, this possibility does not convert the petty crime into a serious one. *See, e.g., United States v. Jenkins,* 42 F.3d 1370, 1371 (11th Cir.1995) ("courts can order supervised release in addition to the maximum term of imprisonment available by statute"); *United States v. West,* 898 F.2d 1493, 1504 (11th Cir.1990) ("Congress intended a defendant's term of supervised release to be 'a separate part' of, or in addition to, his term of imprisonment"); *United States v. LaValley,* 957 F.2d 1309, 1312 (6th Cir.1992) (offense carrying maximum incarceration of six months, a maximum fine of $5,000 and a five year term of supervised release is petty).

*Violation of Probation*

8

Chavez contends that he is subject to a term of imprisonment of one year if he violates a rule of the halfway house. His contention is without legal support. If Chavez violates a term of his probation, he will be afforded a hearing. *See* 18 U.S.C. § 3565; Fed. R.Crim. P. 32.1. The court may either continue his probation (with or without modifying its terms) or it may revoke the probation. *See* 18 U.S.C. § 3565(a)(1), (a)(2). If probation is revoked and the court elects to imprison Chavez, the maximum term of imprisonment is six months. *See* 18 U.S.C. § 3565(a)(2) (referring to subchapter A which includes, *inter alia,* 18 U.S.C. §§ 3559 and 3551); 18 U.S.C. § 3559(a)(7) (the maximum term of imprisonment for a Class B misdemeanor is six months); 18 U.S.C. § 3551 (authorizing term of probation, fine and restitution).

*Loss of Right to Bear Arms*

Chavez claims that as further evidence of the seriousness of his offense, a conviction would deprive him of his Second Amendment right to bear arms.[5] Title 18 makes it illegal for anyone to possess a firearm who has been "convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(d)(9). Section 922(g)(9) prohibits such persons from possessing or receiving firearms "in or affecting commerce." 18 U.S.C. § 922(g)(9). A " 'misdemeanor crime of domestic violence' means an offense that ... is a misdemeanor under Federal or State law; and ... has, as an element, the use or attempted use of physical

---

[5]According to precedent of the Supreme Court and this Court, Chavez might not have any claim under the Second Amendment since he has not shown his gun possession is reasonably related to a state-run militia. Although Chavez presented evidence that at one point he was a major in the Alabama defense force (Alabama's state militia), he has not argued that his weapon possession was related to the Alabama militia. Chavez repeatedly indicated his intentions to retire to Puerto Rico as soon as he possibly could. He clearly was not planning to be available to serve in the militia of any state. *See Lewis v. United States,* 445 U.S. 55, 65 n. 8, 100 S.Ct. 915, 63 L.Ed.2d 198 (approvingly citing case holding that § 922(g) does not violate Second Amendment and noting that these legislative restrictions do not "trench upon any constitutionally protected liberties."); *United States v. Wright,* 117 F.3d 1265, 1273 (11th Cir.1997) (Second Amendment protects "only the use or possession of weapons that is reasonably related to a militia actively maintained and trained by the states."), *cert. denied,* 522 U.S. 1007, 118 S.Ct. 584, 139 L.Ed.2d 422 (1997)*; vacated in part on other grounds,* 133 F.3d 1412 (11th Cir.1998); *cert. denied,* --- U.S. ----, 119 S.Ct. 217, 142 L.Ed.2d 178 (1998). We need not reach the constitutional issue because, as discussed below, even if Chavez did have some right to bear arms he could have been deprived of it without a jury under these circumstances.

9

force, or the threatened use of a deadly weapon, committed by a current or former spouse...." 18 U.S.C. §
921(a)(33)(A)(i), (ii).

Chavez was convicted of a violation of 18 U.S.C. § 113(a)(4), assault by striking, beating or
wounding within the territory of the United States. This offense is akin to a simple battery. *See United States
v. Guilbert,* 692 F.2d 1340, 1344 (11th Cir.1982). Here, the offense has as an element the use, attempted use
or threatened use of physical force. It was committed against a spouse. Therefore, the offense meets the
statutory definition of "a misdemeanor crime of domestic violence." *See United States v. Smith,* 171 F.3d
617, 620 (8th Cir.1999). Chavez is thus subject to § 922's prohibition.

For the purpose of this appeal, we examine whether Congress manifested its determination that this
statutory mandate constitutes an "additional" penalty that makes the petty offense a serious one carrying a
right to trial by jury. The express language of 18 U.S.C. § 921 demonstrates that it has not. Section 921
provides that a person shall not be considered to have been convicted of such an offense unless he was
represented by counsel in the misdemeanor proceeding or "knowingly and intelligently waived the right to
counsel;" and "in the case of a prosecution for an offense ... for which a person was entitled to a jury trial ...,"
he either was tried by a jury or knowingly and intelligently waived the right to a jury trial. 18 U.S.C. §
921(a)(33)(B)(i)(I), (II). The statute's express language conveys Congress' recognition that some domestic
violence offenses do not carry with them the entitlement to a jury trial even though a conviction results in the
prohibition of firearm possession.[6] Accordingly, we find the prohibition against firearm possession is a
collateral consequence of conviction that does not render Chavez's crime sufficiently serious to entitle him

---

[6]Subject to exceptions, a person who is prohibited from possessing a firearm may petition the Secretary
of Treasury for relief from the disability imposed by § 922. *See* 18 U.S.C. § 925(c). We recognize that
Chavez may not be able to regain his firearm privileges due to lack of Congressional funding for such
petitions. Congress' withdrawal of funding to the Department of Alcohol, Tobacco and Firearms—to which
the Secretary has delegated authority to grant the relief provided by § 925(c)—demonstrates that Congress
intended to suspend the relief. *See United States v. McGill,* 74 F.3d 64, 66-68 (5th Cir.1996). This
suspension of relief, whether temporary or permanent, does not convert the petty offense for which Chavez
was convicted into a serious one.

10

to a trial by jury. *See, e.g., United States v. Garner,* 874 F.2d 1510, 1511-12 (11th Cir.1989) (rejecting argument that the sundry penalties and potential "collateral consequences" of a DUI conviction convert the petty offense into a serious offense). We hold that the prohibition of firearm possession by persons convicted of a misdemeanor crime of domestic violence is not so serious as to entitle them to a jury trial for a presumptively petty offense.

*Payment of costs*

Chavez contends that the court cannot require him to pay for the "cost of his incarceration and to make other payments as a condition of probation in addition to the maximum fine allowed." The government counters that the cost to which Chavez refers is not a cost of incarceration but rather a "subsistence fee" required by the halfway house's regulations which is payable to the halfway house. We agree. The program statement for halfway houses provides that "inmates are required to pay a subsistence charge to help defray the cost of their confinement; this charge is 25% of their gross income, not to exceed the average daily cost of their ... placement."

A court may impose a discretionary condition of probation requiring a defendant to reside in a community corrections facility (halfway house). *See* 18 U.S.C. § 3563(b)(11). Because residence in the halfway house was a condition of Chavez's probation, the "subsistence fee" is merely a cost attendant to the probationary condition. This subsistence fee cannot be a fine because it is paid to a private entity, not the sovereign. A fine has been defined as a "payment to a sovereign as punishment for some offense." *Browning-Ferris Industries of Vermont v. Kelco Disposal, Inc.,* 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). The subsistence fee does not meet this definition because it must be paid to the halfway house rather than to the government. Therefore, it cannot be calculated as part of the punitive $5,000 statutory maximum fine.

*Mental Evaluation*

11

Chavez contends that the court's requirement that he undergo a mental evaluation, complete any necessary treatment and pay any associated costs deprives him of liberty and property without due process of law and is unreasonable. As a discretionary condition of probation, a court may require a defendant to undergo medical, psychiatric or psychological treatment. *See* 18 U.S.C. § 3563(b)(9). At his expense, Chavez was required to undergo a mental health evaluation and to complete any recommended mental health treatment program. Any costs are probationary costs that will not be paid to the government; they are not fines. Therefore, the condition is a lawful and reasonable part of his probationary sentence.

*Residence in Halfway House*

Chavez contends that his six month confinement in a halfway house is "plainly unreasonable and unlawful" because it is "in reality ... a term of imprisonment ... in the constitutional sense." He claims that his confinement carries a loss of important rights including but not limited to the right to vote, right of association, freedom of speech, freedom of religion, access to court, right to quit work, and the right to travel.

A sentencing court has the discretion to impose a probationary condition requiring a defendant to reside in a community corrections facility. *See* 18 U.S.C. § 3563(b)(11). Probation penalties "may engender 'a significant infringement of personal freedom,' but they cannot approximate in severity the loss of liberty that a prison term entails .... because incarceration is an 'intrinsically different' form of punishment." *Blanton,* 489 U.S. at 542, 109 S.Ct. 1289 (internal citations omitted). Although discretionary conditions infringe upon a defendant's liberty interests, they are "far less intrusive than incarceration." *Nachtigal,* 507 U.S. at 5, 113 S.Ct. 1072. As he resides in the halfway house, Chavez can still work full-time, and in fact is required to do so.[7] He may leave the facility with permission. He may have visitors on weekends. Any deprivations of Chavez's liberty are in accordance with the punitive, deterrent and rehabilitative purposes of punishment. *See* 18 U.S.C. § 3553; 18 U.S.C. § 3563(b).

---

[7]In its order denying Chavez's petition to stay execution of sentence, the district court stated that it imposed the sentence so Chavez could maintain his employment at the United States Post Office.

We have previously held that confinement to a halfway house at night with the requirement that a defendant work at a job or seek employment during the day is a liberty "markedly different from custodial incarceration in a penitentiary." *Dawson v. Scott,* 50 F.3d 884, 888 (11th Cir.1995) (citing *United States v. Parker,* 902 F.2d 221, 222 (3d Cir.1990) (confinement permitting release for work "cannot possibly be equated with an equivalent period of imprisonment")). We conclude that residence in a halfway house is not tantamount to imprisonment. It is a lawful and reasonable part of Chavez's probationary sentence.

### Denial of other rights

Chavez contends that the court infringed upon his right of access to court and his right to contract by (1) notifying those with whom he had financial dealings or with whom he was in litigation about his incarceration, (2) denying him the right to have his brother act as an attorney-in-fact on his behalf in court proceedings in Puerto Rico related to his inheritance, and (3) ordering him to pay $1,200 per month "to his estranged wife as restitution." Chavez contends that these were unlawful and unreasonable conditions of probation. We find no merit in any of these arguments.

Chavez's objection to notifying third parties of his judgment and conviction is baseless. The judgment and conviction are public documents and the court did not err in requiring that certain persons be notified about the incarceration. *See Daugherty v. Dugger,* 839 F.2d 1426, 1430 (11th Cir.1988) ("convictions are matters of public record based on judicial determinations").

The court prohibited Chavez from dispersing any funds from his financial portfolio or any inheritance without its permission or the permission of the domestic relations division of the state court in which his divorce proceedings are pending. Consequently, Chavez filed a motion in the district court to have his brother appointed as an attorney-in-fact to act on his behalf in proceedings related to his inheritance. The district court and this Court are not the proper fora to address this motion; it has no bearing on Chavez's conviction, sentence or appeal. The district court's denial does not prevent Chavez from renewing his request before the state court with jurisdiction over Chavez's domestic matters.

13

Contrary to Chavez's belief, the requirement that he pay $1,200 per month to his wife was not ordered as restitution. It was ordered as a condition of his probation. The court ordered Chavez to pay his wife living expenses of $1,200 per month, "or an amount in accordance with a local Court order." A court may impose a discretionary probation condition requiring a defendant to "support his dependents and meet other family responsibilities." 18 U.S.C. § 3563(b)(1). This condition was a reasonable and lawful part of Chavez's sentence.

*Discrepancy Between Oral and Written Sentence*

Chavez contends that the court erred in changing the condition of his probation to require that he "successfully complete" a domestic violence rehabilitation program rather than merely "attend" it. Chavez argues that successful completion of the program infringes upon his right against self-incrimination because it would require him to admit his guilt.

As a mandatory condition of probation, the court must order a defendant convicted for the first time of domestic violence to "attend" a court-approved offender rehabilitation program. *See* 18 U.S.C. § 3563(a)(4). At the sentencing hearing, defense counsel brought the distinction between successful completion and attendance of the program to the court's attention. The court required Chavez to "attend a court approved rehabilitation program for domestic violence offenders." However, in its written judgment, as a condition of probation, the court ordered Chavez to "successfully complete" the program.

When the oral pronouncement of a sentence varies from the written judgment, the oral pronouncement governs. *See Patterson v. United States,* 386 F.2d 142, 143 (5th Cir.1967)[8]; *see also United States v. Kindrick,* 576 F.2d 675, 677 (5th Cir.1978); *Chunn v. United States,* 462 F.2d 1100, 1101-02 (5th Cir.1972). Since the transcript of the sentencing hearing contains no ambiguity regarding this term and the court's intention, we remand for a limited purpose. We instruct the district court to enter an amended

---

[8]This Court has adopted all decisions rendered by the former Fifth Circuit prior to October 1, 1981. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

judgment that conforms to its oral pronouncement requiring that Chavez attend a court-approved rehabilitation program for domestic violence offenders.

*Admission of Rule 404(b) Evidence*

Chavez argues that the district court erred in admitting evidence of his alleged prior assaults committed in 1997 and 1985 against his wife. The court ruled that these acts were admissible under Federal Rule of Evidence 404(b) as proof of motive, design, opportunity or absence of mistake but noted that intent was not an issue. We review the district court's evidentiary decision for abuse of discretion. *See United States v. Lampley,* 68 F.3d 1296, 1299 (11th Cir.1995).

Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Fed.R.Evid. 404(b). To be admissible, 404(b) evidence must (1) be relevant to one of the enumerated issues and not to the defendant's character; (2) the prior act must be proved sufficiently to permit a jury determination that the defendant committed the act; and (3) the evidence's probative value cannot be substantially outweighed by its undue prejudice, and the evidence must satisfy Rule 403.[9] *See Lampley,* 68 F.3d at 1299 (citation omitted).

On two prior occasions, Chavez had been drinking and physically abused his wife. This evidence, admitted over Chavez's objection, is not calculated to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident." Fed.R.Evid. 404(b). The evidence bore no reasonable relationship to any of the issues at trial nor to Chavez's defense. Chavez's defense was that he acted in self-defense. He testified that his wife hit him and he tried to restrain her from hurting him or herself. Based upon our careful review of the record, we conclude that the evidence of Chavez's prior assaults on his wife

---

[9]The "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

15

was offered to demonstrate bad character, and should, therefore, not have been admitted. This error, however, was harmless, considering all of the other evidence against Chavez. *Cf. United States v. Lail,* 846 F.2d 1299, 1301-02 (11th Cir.1988). The trial transcript indicates that the other evidence produced against Chavez at trial was substantial and his rights were not affected. *Cf. United States v. Hubert,* 138 F.3d 912, 914 (11th Cir.1998) (abuse of discretion by admitting 404(b) evidence is harmless error when there is substantial evidence against defendant), *cert. denied,* --- U.S. ----, 119 S.Ct. 201, 142 L.Ed.2d 165 (1998); *United States v. Martin,* 794 F.2d 1531, 1533 n. 4 (11th Cir.1986) (admission of 404(b) evidence is harmless error when evidence of guilt is substantial and defendant's rights not affected).

Assault by striking, beating or wounding under 18 U.S.C. § 113(a)(4) is the same as a simple battery. It does not require proof of a certain degree of injury or specific intent. *See United States v. Guilbert,* 692 F.2d 1340, 1344 (11th Cir.1982). " 'The least touching of another's person wilfully, or in anger, is a battery.' " *United States v. Stewart,* 568 F.2d 501, 505 (6th Cir.1978) (quoting 3 W. Blackstone, Commentaries on the Law of England § 120 (E. Christian ed. 1822)). The evidence against Chavez was that he grabbed his wife by the hair, slapped her in the face a couple of times and hit her with his fist in the back of the neck, while screaming and cursing at her. An eyewitness saw Chavez holding his wife by the hair and neck in a choking manner. Mr. Chavez smelled of alcohol. Mrs. Chavez's injuries were consistent with either slapping or rubbing against hands or pants. In the absence of the prior act evidence, the evidence against Chavez was overwhelming. *See United States v. Hosford,* 782 F.2d 936, 939 (11th Cir.1986) (harmless error to admit 404(b) evidence when evidence was overwhelming).

### III. CONCLUSION

In sum, we find that Chavez was not entitled to a jury trial because the offense with which he was charged is presumptively petty and its additional penalties are not so serious that they reflect Congress' determination that the offense is severe. The sentence is reasonable and lawful. We further find that the district court committed harmless error by admitting the prior act evidence. Accordingly, Chavez's conviction

and sentence are affirmed, but we remand for a limited purpose and instruct the district court to enter an amended judgment that conforms to its oral pronouncement requiring Chavez to attend a court-approved rehabilitation program for domestic violence offenders.

AFFIRMED and REMANDED with instructions.