[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15664

_____

D.C. Docket No. 2:16-cr-00081-SPC-CM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERRY BROWDY, et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(December 30, 2019)

Before WILSON and GRANT, Circuit Judges, and HINKLE,[*] District Judge.

PER CURIAM:

_____

[*] Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida, sitting by designation.

Jerry Browdy, Brown Laster, and Wesley Petiphar appeal their convictions and life sentences for conspiring to possess with intent to distribute and to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Each argues that the evidence was insufficient to uphold his convictions and that the district court committed reversible error in its evidentiary decisions. Each also argues that the district court abused its discretion by denying motions for a new trial after a witness made a brief, unprompted reference to Laster's prior period of incarceration. Finally, each argues that his sentence is procedurally and substantially unreasonable. We affirm the convictions and sentences.

I.

Each defendant argues that the evidence at trial was insufficient to support the jury's conclusion that he was guilty of the charged conspiracy. We review challenges to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the jury's verdict. *United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1999). "A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." *Id.*

To convict the defendants of the charged conspiracy, the United States had to prove that (1) an illegal agreement existed; (2) the defendants knew of the conspiracy; and (3) the defendants voluntarily joined it. *United States v. Hernandez*, 433 F.3d 1328, 1333 (11th Cir. 2005) (citation omitted). Guilt may be established even when a defendant does not know all of the details or members of the conspiracy, so long as a common plan and purpose are present. *See United States v. Perez-Tosta*, 36 F.3d 1552, 1557 (11th Cir. 1994).

A reasonable jury could easily have found each of the defendants guilty of the charged conspiracy. "Credibility determinations are the exclusive province of the jury," and a jury may find a defendant guilty solely on the basis of testimony offered by witnesses for the government. *See United States v. Parrado*, 911 F.2d 1567, 1570–71 (11th Cir. 1990). By the time of trial, multiple members of the former conspiracy were cooperating witnesses for the government. Their testimony was sufficient to establish both the existence of the conspiracy to ship methamphetamine from California to Florida and Georgia and that each defendant had knowingly and voluntarily joined it. For example, one cooperating witness testified that all three defendants came to her house and that Laster took the lead in recruiting her to pick up drug shipments. Another witness testified that Petiphar recruited her to pick up drug shipments from hotels. Browdy's own daughter testified that he had recruited her to pick up drug shipments as well. Particularly

given the overlapping members, timeframe, and location of the charged conspiracy, a reasonable jury could have concluded that each defendant was guilty.

## II.

Laster and Browdy claim that the evidence at trial materially varied from the indictment because it showed multiple conspiracies. "We will not reverse a conviction because a single conspiracy is charged in the indictment while multiple conspiracies may have been revealed at trial unless the variance is [1] material and [2] substantially prejudiced the defendant." *United States v. Richardson*, 532 F.3d 1279, 1284 (11th Cir. 2008) (citation omitted). However, "a jury's conclusion that a single conspiracy existed should not be disturbed as long as it is supported by the evidence." *Id.* (citing *United States v. Moore*, 525 F.3d 1033, 1042 (11th Cir. 2008). "To determine whether a jury could reasonably have found that this evidence established a single conspiracy beyond a reasonable doubt, we must consider: '(1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants.'" *Id.* (quoting *Moore*, 525 F.3d at 1042). We recognize that the existence of "different sub-groups" does not undermine the jury's finding of a single conspiracy so long as each group acted "in furtherance of one overarching plan." *Id.* (citation omitted). For similar reasons that the evidence was sufficient to find each defendant guilty of the charged conspiracy, therefore, we conclude that there was no material variance at trial.

4

(Nor, in any case, have the defendants shown that any prejudice would have resulted if the evidence had established multiple conspiracies.) *See id.* (requiring substantial prejudice to warrant reversal).

The defendants' other objections relating to the nature of the evidence at trial are unsuccessful. Brown and Petiphar assert a "mere presence" defense—but the jury was properly instructed that mere presence was insufficient and the evidence suggested that each defendant actively recruited other members into the conspiracy. *Cf. United States v. Hernandez*, 433 F.3d 1328, 1334 (11th Cir. 2005) (explaining that the jury was free to disbelieve a defendant's mere presence defense and infer from the evidence that the defendant was a willing participant). Browdy argues that the government did not show that he actually possessed methamphetamine, but in a conviction for a conspiracy "neither actual possession nor actual distribution is a necessary element of the crime." *United States v. Diaz*, 190 F.3d 1247, 1253 (11th Cir. 1999).

Laster argues that the district court should have permitted testimony regarding an out-of-court statement by a cooperating witness's wife that the cooperating witness wanted to "frame" Laster. Laster suggests that the statement should have been admitted because the cooperating witness's wife would have been unavailable to testify and that the statement was admissible because it was against her penal interest.

We disagree.  Even if we were to assume that the witness's wife would be unavailable, her statement that the witness framed Laster may have been against the witness's interests—but it wasn't against his *wife's* penal interest.  Nor was Laster denied the right to provide a complete defense.  *See United States v. Mitrovic*, 890 F.3d 1217, 1222 (11th Cir. 2018) (citation omitted) (while "a criminal defendant must be given every meaningful opportunity to present a complete defense, in doing so he must comply with the procedural and evidentiary rules designed to facilitate a search for the truth").  Laster was able to cross-examine the agent that had worked with the cooperating witness and was therefore able to present arguments about the veracity or reliability of that witness.  That evidentiary basis was sufficient to prevent any violation of Laster's Sixth Amendment rights.

Finally, Browdy challenges a variety of other evidentiary decisions made by the district court.  Browdy argues that evidence of a co-conspirator's violence toward another co-conspirator and testimony by Browdy's daughter that she was disappointed in her father should not have been admitted.  He objects to the district court's exclusion of evidence that Browdy's daughter visited him in jail.  He also argues that several questions by the prosecution addressed inappropriate topics.

But "we review the district court's evidentiary rulings for clear abuse of discretion."  *United States v. Westry*, 524 F.3d 1198, 1214 (11th Cir. 2008)

(internal quotation marks and citation omitted).  Evidentiary rulings are not grounds for reversal if they are harmless.  *See United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000).  In other words, where "sufficient evidence uninfected by error supports the verdict, reversal is not warranted."  *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990).  Accordingly, even if we were to agree with Browdy on any of his objections, reversal would not be warranted because sufficient evidence unrelated to his objections supports his conviction.

## II.

Each defendant appeals the district court's denial of a mistrial after a witness briefly mentioned that Laster had previously been incarcerated.  We review a decision not to grant a mistrial for an abuse of discretion, and a defendant must show that his substantial rights were prejudicially affected.  *United States v. Emmanuel*, 565 F.3d 1324, 1334 (11th Cir. 2009) (citation omitted).  Importantly for this case, the "mere utterance of the word jail, prison, or arrest does not, without regard to context or circumstances, constitute reversible error per se."  *Id.* (citation omitted).  Where "the comment is brief, unelicited, and unresponsive, adding nothing to the government's case, the denial of a mistrial is proper."  *Id.* (citation omitted).

The comment in this case was exactly that which we have previously noted does not warrant a mistrial: brief, unelicited, and unresponsive.  We note, in

addition, that the district court offered to make a curative instruction—an offer

which was denied. *Cf. United States v. Jennings*, 599 F.3d 1241, 1249–50 (11th

Cir. 2010) (considering the "refusal of an instruction"). Under these

circumstances, the district court did not abuse its discretion in denying the motions

for mistrial.

### III.

Each defendant also raises various challenges to his life sentence.[1] We

apply a deferential abuse-of-discretion standard when reviewing a defendant's

sentence. *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009). The

party challenging the sentence bears the burden of showing that the sentence is

unreasonable in light of the record and the 18 U.S.C. § 3553(a) factors. *United*

*States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008). We review the district

court's factual findings at sentencing for clear error. *See United States v. Ramirez*,

426 F.3d 1344, 1355 (11th Cir. 2005).

Laster argues that the district court erred by applying a four-level

enhancement to his offense level for acting as an organizer or leader. *See* U.S.S.G.

§ 3B1.1(a). But the district court did not clearly err in making that determination,

---

[1] Petiphar's challenge to the United States' filing of a 21 U.S.C. § 851 notice seeking a statutory sentencing enhancement is without merit. *See United States v. Toombs*, 748 F. App'x 921, 929–30 (11th Cir. 2018). So too for his unpreserved and unspecific objection to the prosecutor's arguing of facts during sentencing. *See United States v. Ramirez-Flores*, 743 F.3d 816, 821–22 (11th Cir. 2014).

8

because Laster took an active role recruiting others to the scheme and received a comparatively large share of the proceeds.

Brown and Petiphar, meanwhile, argue that the district court erred by applying a three-level enhancement for acting as a manager or supervisor. *See* U.S.S.G. § 3B1.1(b). The district court did not clearly err in making that determination with regard to either Brown or Petiphar, as the evidence suggested each exerted active control over another member of the conspiracy. *Cf. United States v. Baldwin*, 774 F.3d 711, 734 (11th Cir. 2014).

Each defendant argued that the district court clearly erred by applying a two-level firearm enhancement due to an event in which the conspiracy's label supplier for packages was threatened with a gun in his mouth. The two-level firearm enhancement is appropriate if the use of the firearm "was reasonably foreseeable by the defendant, occurred while he was a member of the conspiracy, and was in furtherance of the conspiracy." *United States v. Villarreal*, 613 F.3d 1344, 1359 (11th Cir. 2010). We cannot say, given the widespread scope of this drug trafficking scheme, that the district court clearly erred in finding that the use of a firearm was reasonably foreseeable by each defendant. *Cf. United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006).

Browdy argues against the application of a two-level enhancement that resulted from the combination of his aggravated-role adjustment and the district

9

court's finding that he used "fear, impulse, friendship, affection, or some combination" to recruit a person into the scheme that "received little or no compensation" and had "minimal knowledge of the scope and structure of the enterprise." U.S.S.G. § 2D1.1(b)(15)(A). The district court did not clearly err in concluding that Browdy's use of familial affection to induce his daughter to join the scheme satisfied for the requirements for this enhancement—particularly given the low level of compensation she received in comparison to the scale of the conspiracy. This error would also have been harmless, as Browdy's offense level met the cap of 43 even before it was applied. *See Sarras*, 575 F.3d at 1220 n.39.

We lastly consider the substantive reasonableness of each defendant's sentence. "We do not presume that a sentence falling within the guidelines range is reasonable, but we ordinarily expect it to be so." *United States v. Croteau*, 819 F.3d 1293, 1309–10 (11th Cir. 2016) (citing *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008)). After careful review of the trial and sentencing records, we conclude the district court did not abuse its discretion in finding that the guidelines recommended sentence of life was appropriate and that no downward variance was warranted.[2] *Cf. United States v. Goodlow*, 389 F. App'x 961, 970 (11th Cir. 2010).

---

[2] Nor can we agree with the defendants to the extent they argue that they were entitled to a downward departure. *See United States v. Moran*, 778 F.3d 942, 982 (11th Cir. 2015) ("We lack jurisdiction to review a district court's discretionary refusal to grant a downward departure, unless the district court incorrectly believed it lacked the authority to depart from the guidelines range.").

The defendants' convictions and sentences are

**AFFIRMED.**